UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

)
JANA BRANDS, INC., )
 )
    Plaintiff, )
 )
v. )
 ) Civil No. 17-12147-LTS
C.H. ROBINSON, INTERNATIONAL, )
INC., and RYAN FREIGHT )
SERVICES, INC., )
 )
    Defendants. )
)

## ORDER ON MOTION TO DISMISS (DOC. NO. 27)

December 20, 2018

SOROKIN, J.

Plaintiff Jana Brands, Inc. ("Jana Brands") brought this action on November 2, 2017, and amended its Complaint on April 20, 2018. Docs. No. 1, 25. The Amended Complaint claims that the actions of defendants C.H. Robinson, International, Inc. ("C.H. Robinson") and Ryan Freight Services, Inc. ("Ryan") caused Jana Brands to incur more than $154,000 in damages when U.S. Customs and Border Protection ("CBP") denied Jana Brands's claims for refund of previously paid customs duties, taxes, and fees. Doc. No. 25 ¶ 11, 27. On May 4, 2018, Defendant C.H. Robinson, International, Inc. ("C.H. Robinson") moved to dismiss Counts III and IV against them for failure to state a claim under Rule 12(b)(6) of the Federal Rules of Civil Procedure. Doc. No. 27. Jana Brands opposed. Doc. No. 32. For the reasons set forth below, the Court ALLOWS in part and DENIES in part C.H. Robinson's motion to dismiss.

I. FACTS

C.H. Robinson and Ryan are licensed by CBP to act as brokers on behalf of third-party importers and purport to be experts in their field. Doc. No. 25 at ¶ 29. Jana Brands, which imports tuna in pouches, engaged C.H. Robinson and Ryan to act as its U.S. customs brokers. Id. at ¶¶ 7–8.

At some point before September 2015, the U.S. Food and Drug Administration barred from entry into the United States tuna that Jana Brands had shipped from Thailand. Id. ¶ 11. In their role as Jana Brands's customs brokers, in September 2015, C.H. Robinson and Ryan filed unused merchandise drawback claims on behalf of Jana Brands. Id. at ¶ 10. The claims sought a refund for duties, taxes, and fees Jana Brands paid on the barred shipments. Id. at ¶ 11.

Because the barred shipments had been examined by CBP in Chicago but were going to be exported back to Thailand from the Port of Los Angeles, CBP regulations required that the merchandise be transported in-bond from Chicago to Los Angeles. Id. at ¶¶ 13, 14; see also 19 C.F.R. § 191.35(d). Such transportation, which occurred without incident, was arranged for and carried out by parties other than C.H. Robinson and Ryan. Id. at ¶ 15. However, CBP regulations require that various paperwork be completed to effect in-bond transportation, and CBP will deny drawback claims if these requirements are not met. Id. at ¶ 18–22. Jana Brands relied on C.H. Robinson and Ryan to submit to CBP the paperwork required to effectuate the in-bond transportation process such that Jana Brands would receive the refund owed. Id. at ¶ 24. C.H. Robinson and Ryan failed to properly submit the paperwork. Id. at ¶¶ 25–26. As a result, CBP denied Jana Brands' drawback claims, causing Jana Brands to incur damages of over $154,000. Id. at ¶¶ 27–28.

Jana Brands now brings claims of breach of contract (Count I as to C.H. Robinson and Count II as to Ryan), negligence (Count III), and unfair and deceptive business practices under Mass. Gen. Laws ch. 93A, §§ 2, 11 (Count IV) against C.H. Robinson and Ryan. Id. at ¶¶ 31–49.

II. LEGAL STANDARD

To survive a motion to dismiss under Rule 12(b)(6), a complaint must contain sufficient factual allegations to "state a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). In evaluating a complaint, the court must accept all factual allegations in the complaint as true and construe all reasonable inferences in the plaintiff's favor. Watterson v. Page, 987 F.2d 1, 3 (1st Cir. 1993). The tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions and "threadbare recitals of the elements of a cause of action." Iqbal, 556 U.S. at 678. A reviewing court must conduct a "context-specific" assessment of the pleadings by drawing on "its judicial experience and common sense." Maldonado v. Fontanes, 568 F.3d 263, 269 (1st Cir. 2009) (quoting Iqbal, 556 U.S. at 663-64). A complaint must be dismissed for failure to state a claim when it lacks "factual allegations, either direct or inferential, respecting each material element necessary to sustain recovery under some actionable legal theory." Berner v. Delahanty, 129 F.3d 20, 25 (1st Cir. 1997).

III. ANALYSIS

A. Preemption

Defendant C.H. Robinson argues that Counts III and IV against them fail to state a claim because they are expressly preempted by the preemption provision of the Interstate Commerce

Commission Termination Act of 1995 ("ICCTA").[1] The ICCTA, which governs interstate transportation of property, provides in relevant part:

> [A] State . . . may not enact or enforce a law, regulation, or other provision having the force and effect of law related to a price, route, or service of any motor carrier . . . or any motor private carrier, broker, or freight forwarder with respect to the transportation of property.

49 U.S.C. § 14501(c)(1).[2] The ICCTA contains further definitions of various terms, three of which are particularly relevant. A "motor carrier" is "a person providing motor vehicle transportation for compensation." Id. § 13102(14). A "broker" is "a person, other than a motor carrier or an employee or agent of a motor carrier, that as a principal or agent sells, offers for sale, negotiates for, or holds itself out by solicitation, advertisement, or otherwise as selling, providing, or arranging for, transportation by motor carrier for compensation." Id. § 13102(2). Finally, "transportation" includes:

> (A) a motor vehicle, vessel, warehouse, wharf, pier, dock, yard, property, facility, instrumentality, or equipment of any kind related to the movement of passengers or property, or both, regardless of ownership or an agreement concerning use; and
>
> (B) services related to that movement, including arranging for, receipt, delivery, elevation, transfer in transit, refrigeration, icing, ventilation, storage, handling, packing, unpacking, and interchange of passengers and property.

49 U.S.C. § 13102(23).

C.H. Robinson argues that the services it provided to Jana Brands upon which its claim is founded were related to the interstate transportation of property and therefore are preempted by

---

[1] C.H. Robinson concedes that ICCTA does not bar actions for breach of contract and does not move to dismiss Count I. Doc. No. 28 at 8.
[2] The Federal Aviation Administration Authorization Act of 1994 contained a similar preemption provision. 108 Stat. 1605–06. The ICCTA repealed that provision and reenacted it at its current location. 109 Stat. 843, 899. Although much of the case law discussing the scope of the provision's preemptive effect uses the name of the earlier act, the Court uses the latter act's name because the parties used it in their briefing.

the ICCTA. See Doc. No. 28 at 7–8. Jana Brands argues that C.H. Robinson's role was limited to acting as Jana Brands's agent in Customs business and that such services are not encompassed by the ICCTA's preemption. See Doc. No. 32 at 9–10.

The ICCTA's preemption language is borrowed from the Airline Deregulation Act, 49 U.S.C. § 41713(b)(1), and inherits its "broad pre-emptive purpose," see Dan's City Used Cars, Inc. v. Pelkey, 569 U.S. 251, 260 (2013). "Pre-emption may occur even if a state law's effect on rates, routes, or services is only indirect." Rowe v. N.H. Motor Transp. Ass'n, 552 U.S. 364, 370 (2008) (internal quotations omitted). "At the same time, the breadth of the words 'related to' does not mean the sky is the limit," and the ICCTA "does not preempt state laws affecting carrier prices, routes, and services in only a tenuous, remote, or peripheral manner." Dan's City Used Cars, 569 U.S. at 261. Finally, a state law must concern a motor carrier's transportation of property, and "preemption does not apply when a state statute concerns motor carriers in matters unrelated to the transportation of property." Mass. Delivery Ass'n v. Coakley, 769 F.3d 11, 22–23 (1st Cir. 2014). The "scope of [such] preemption would be far broader." Id.

The preemption provision of the ICCTA does not bar Jana Brands's negligence and Chapter 93A claims. C.H. Robinson was Jana Brands's broker, or agent, to CBP and had responsibility for transactions with CBP to ensure the refund of the duties, taxes, and fees that Jana Brands had paid on the barred shipments. Doc. No. 25 at ¶ 24. This activity does not fall within the ICCTA's definition of a "broker," which requires that brokers sell, arrange, or negotiate for transportation by motor carrier, 49 U.S.C. § 13102(2)—duties that Jana Brands plainly does not allege C.H. Robinson performed on its behalf. Those activities fall within the normal ambit of a freight broker, not a Customs broker. C.H. Robinson cites no case in which the

5

ICCTA was held applicable to a claim based on Customs brokerage services where the defendant had not also provided transportation or arranged for another to provide transportation.

Further, C.H. Robinson's services do not relate to transportation within the meaning of the ICCTA. The law's definition of "transportation" specifies a set of services, which, although not exclusive, are all "related to . . . movement" by motor carrier of property. 49 U.S.C. § 13102(23)(B). In this case, Jana Brands does not allege that C.H. Robinson had any role in the physical *movement* of its property, which was arranged for and actually provided by other parties. Doc. No. 25 at ¶ 15. Even so, C.H. Robinson argues that its services, as alleged in Jana Brands's Amended Complaint, fall within the statutory definition of "transportation" because the shipments' transportation "triggered the need for the services at issue." Doc. No. 28 at 8. But C.H. Robinson's role was limited to facilitating documentation for CBP of the handling of the goods as they were prepared for export, a responsibility that plainly is not "related to [the] movement" of Jana Brands's shipments as each of the physical activities listed in § 13102(23)(B) is. Cf. Georgia Nut Co. v. C.H. Robinson Co., Civ. No. 17-3018, 2017 WL 4864857, at *4 (N.D. Ill. Oct. 26, 2017) (holding that a claim against a freight broker for "processing an insurance claim well after the completion of shipping" did not relate to the transportation of property such that it was preempted). Because C.H. Robinson's Customs brokerage services were distinct from and unrelated to the physical movement of Jana Brands's barred shipments, the ICCTA does not preempt claims arising from those services.

Tellingly, neither Jana Brands's Amended Complaint nor any of the moving papers for this motion specify the means used to transport Jana Brands's barred shipments from Chicago to Los Angeles. The ICCTA's preemptive effect could only apply if the transportation was by motor carrier. 49 U.S.C. § 14501(c)(1). That term is defined to include only those who provide

6

"motor vehicle transportation," id. § 13102(14), which in turn is defined to include only vehicles "used on a highway," id. § 13102(16). If, for example, Jana Brands's barred shipments had been transported by rail, the ICCTA's preemption provision would be clearly inapplicable, since C.H. Robinson's brokerage service would not be for, or related to, "transportation by motor carrier" within the meaning of the ICCTA. Although the Court does not rely on the parties' omission of the means of transportation for its determination that the ICCTA does not preempt these claims, its absence nevertheless illustrates the lack of connection between C.H. Robinson's Customs brokerage services and the physical transportation of Jana Brands's barred shipments.

Accordingly, the Court DENIES C.H. Robinson's motion to dismiss with respect to Count III and proceeds to analyze its alternative ground for the dismissal of Count IV.

B.      Chapter 93A

C.H. Robinson also argues that Count IV fails to state a claim under Massachusetts law. Jana Brands alleges that C.H. Robinson and Ryan's actions in this matter "constitute unfair and deceptive business acts and practices" under Mass. Gen. Laws ch. 93A, §§ 2, 11. Doc. No. 25 ¶ 47. C.H. Robinson argues that the facts alleged in Jana Brands's Amended Complaint, even taken as true, do not "raise an inference of extreme or egregious conduct sufficient to support a Chapter 93A claim." Doc. No. 28 at 14.

Chapter 93A proscribes "unfair or deceptive acts or practices in the conduct of any trade or commerce." Mass. Gen. Laws ch. 93A, § 2. A violation of Chapter 93A "requires, at the very least, more than a finding of mere negligence," Darviris v. Petros, 812 N.E.2d 1188, 1192 (Mass. 2004), although "a negligent misrepresentation may be so extreme or egregious as to constitute a violation." Marram v. Kobrick Offshore Fund, Ltd., 809 N.E.2d 1017, 1032 (Mass. 2004). A claim for breach of contract must have "some egregious circumstance surrounding that breach

7

[that] provid[es] the further ingredient of 'unfairness' to make out" a Chapter 93A claim. Stonehill Coll. v. Mass. Comm'n Against Discrimination, 808 N.E.2d 205, 229–30 (Mass. 2004). The First Circuit has "followed the Massachusetts courts' lead in using the term 'egregious' to state the standard of [Chapter] 93A liability." Baker v. Goldman, Sachs & Co., 771 F.3d 37, 51 (1st Cir. 2014).

Jana Brands alleges that the defendants held "themselves out as experts in the field of U.S. customs laws, rules, regulations, customs and practices, and are in fact licensed by CBP to act as Customs brokers and to conduct Customs business on behalf of third party importers." Doc. No. 25 ¶ 29. Jana Brands further alleges that, although it relied on these representations when it hired the defendants and expected that the defendants would "stand behind their work," they "failed and refused to make good on their representations" by offering compensation for Jana Brands's losses. Id. ¶¶ 29–30. These claims do not allege egregious conduct sufficient to state a Chapter 93A claim. Jana Brands does not claim that the defendants misrepresented their qualifications, licensure, or business practices, much less egregiously. The defendants' alleged failure to file the proper paperwork on Jana Brands's behalf does not, on its own, suggest that they are not qualified Customs brokers. Although Jana Brands alleges that the defendants' "unfair and deceptive acts and practices" were "willful and knowing," id. ¶ 48, it does not allege specific actions that were unfair or deceptive sufficient to make out a Chapter 93A claim, nor any that demonstrate knowledge and willfulness.[3] Standing on their own, the defendants' alleged negligence and breach of contract therefore do not give rise to a Chapter 93A claim.

---

[3] Jana Brands further argues in its opposition that, because the defendants owed Jana Brands a fiduciary duty as its agents, their conduct in violation of that duty was sufficiently egregious to give rise to a Chapter 93A claim. Doc. No. 32 at 14. Jana Brands cites no case allowing a Chapter 93A claim in the fiduciary context, much less authority for the proposition that a breach of fiduciary duty, unlike a breach of contract, suffices for a Chapter 93A claim in the absence of

Because Jana Brands's Amended Complaint does not contain factual allegations sufficient to meet the "egregious" standard required for a Chapter 93A claim, C.H. Robinson's motion to dismiss is ALLOWED as to Count IV with respect to both defendants.

IV. CONCLUSION

For the foregoing reasons, C.H. Robinson's motion to dismiss, Doc. No. 27, is DENIED as to Count III and ALLOWED as to Count IV. This matter shall proceed according to the Court's scheduling order, Doc. No. 40.

SO ORDERED.

/s/ Leo T. Sorokin
Leo T. Sorokin
United States District Judge

---

"some further ingredient of 'unfairness.'" Stonehill Coll., 808 N.E.2d 205, 230. Because Jana Brands does not allege that the defendants breached their fiduciary duty for personal benefit or some other inherently unfair reason, the alleged breach does not on its own give rise to Chapter 93A liability.