UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| JANA BRANDS, INC., ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Civil No. 17-12147-LTS |
| ) | |
| C.H. ROBINSON INTERNATIONAL, ) | |
| INC. and RYAN FREIGHT SERVICES, ) | |
| INC., ) | |
| ) | |
| Defendants. ) | |
| ) | |
| C.H. ROBINSON INTERNATIONAL, ) | |
| INC., ) | |
| ) | |
| Cross Claimant, ) | |
| ) | |
| v. ) | |
| ) | |
| RYAN FREIGHT SERVICES, INC., ) | |
| ) | |
| Cross Defendant. ) | |

MEMORANDUM AND ORDER ON DEFENDANT C.H. ROBINSON INTERNATIONAL,
INC.'S MOTION FOR SUMMARY JUDGMENT (DOC. NO. 66)

April 12, 2021

SOROKIN, J.

Plaintiff Jana Brands, Inc. brought this action on November 2, 2017 against Defendants C.H. Robinson International, Inc. and Ryan Freight Services, Inc. Doc. No. 1. Jana Brands claims the actions of C.H. Robinson and Ryan Freight caused Jana Brands to incur more than $154,000 in damages when U.S. Customs and Border Protection ("CBP") denied Jana Brands'

1

claims for refund of previously paid customs duties, taxes, and fees. Doc. No. 25 ¶ 11, 27.[1] C.H. Robinson has moved for summary judgment on Count I (breach of contract) and Count III (negligence) of Jana Brands' Amended Complaint. Doc. No. 66. The motion is fully briefed, and the Court heard argument on April 2, 2021. Doc. No. 90. For the reasons which follow, C.H. Robinson's Motion for Summary Judgment (Doc. No. 66) is DENIED.

I. BACKGROUND

    A. Factual Background

Jana Brands imports various seafoods into the United States. Doc. No. 87 at 1. C.H. Robinson provides custom brokerage services to firms such as Jana Brands. Id. at 1–2. In 2012, Jana Brands engaged C.H. Robinson to perform custom brokerage services on Jana Brands' behalf. Id. at 2. The parties did not execute then (or ever) a written contract defining their relationship. Id. Apparently, no disputes arose between the parties.

In 2014, certain shipments of Jana Brands' imported tuna were inspected and rejected by the U.S. Food and Drug Administration ("FDA") as being unsuitable to enter into commerce in the United States. Id. at 26. The FDA allowed two of Jana Brands' shipments from the same supplier to be "release with comment" into the United States. Id. at 26. Both of these shipments arrived in the United States at the Port of Chicago. Id. at 31. For reasons not now relevant, Jana Brands elected to return these two tuna shipments to its supplier in Thailand rather than sell the seafood in the United States. Id. at 26.

Subject to certain conditions set forth by law and CBP regulations in effect at the time, importers who reexport products upon which they have already paid customs duties are eligible

---

[1] Citations to "Doc. No. __" reference documents appearing on the Court's electronic docketing system; pincites are to the page numbers in the ECF header. Where underlined, these citations provide a hyperlink to the indicated document as it appears on the Court's electronic docket.

to apply to have those payments returned to them in a process known as "duty drawback." See 19 U.S.C. § 1313; 19 C.F.R. § 191.0 et seq.; see also Doc. No. 73 ¶ 3. When Jana originally engaged C.H. Robinson as its customs broker in 2012, the parties did not discuss whether their contract would include drawback services and the topic did not arise until Jana Brands sought to reexport the two shipments of tuna in 2014. Doc. No. 87 at 2, 25–26. Nonetheless, the power of attorney authorizing C.H. Robinson to act on Jana Brands' behalf included authorization for drawback services. Doc. No. 81-1. This was a document prepared by Jana Brands. In contrast, drawback services were not mentioned in the Standard Operation Procedures document prepared by Jana Brands, which was intended to generally govern C.H. Robinson's work on Jana Brands' behalf. Doc. No. 68-4.

Jana Brands and C.H. Robinson entered into discussions to arrange the reexport of the two tuna shipments, during which Jana Brands asked how it could secure a refund of the customs duties it had already paid. Doc. No. 68-7 at 3. C.H. Robinson explained that the drawback process was a niche area of customs law and that the company consequently "partnered with experienced third-party consultants specializing in duty drawback services" who are typically compensated on a contingency fee basis. Id. at 4. C.H. Robinson offered to "guide [Jana Brands] through the process" of securing a drawback, id. at 1, by connecting it with a drawback consultant and further represented that it typically "assists the consultants in qualifying the opportunities and facilitating the initial interactions between the consultants and C.H. Robinson's clients," id. at 4. C.H. Robinson then referred Jana Brands to Ryan Freight, a customs brokerage agency specializing in drawback services, for assistance in securing a drawback on the two tuna shipments. Doc. No. 87 at 8–9. At the time, Ryan Freight and C.H. Robinson had a referral agreement whereby Ryan Freight would pay C.H. Robinson ten percent of whatever Ryan

Freight earned for drawback services performed on behalf of C.H. Robinson's clients. Id. at 6. Jana Brands executed an agreement with Ryan Freight providing that Ryan Freight would receive ten percent of the drawback funds that it recovered for Jana Brands. Id. at 9. For reasons which are not relevant here, Jana Brands requested that Ryan Freight's commission be billed through C.H. Robinson's invoices. Doc. No. 68-7 at 3.

Ryan Freight and C.H. Robinson worked together to organize the reexport and drawback. It was decided the two tuna shipments in the Port of Chicago would be transported to the Port of Los Angeles for reexport to Thailand. Pursuant to a customs regulation governing drawback, the shipments had to be transported "in bond" to Los Angeles in order to maintain Jana Brands' eligibility for drawback. 19 C.F.R. § 191.35; see also Doc. No. 73 at 4. Parties seeking to transport goods in bond are required to request and receive authorization from the CBP using CBP Form 7512. See 19 C.F.R. 18.1; Doc. No. 73 at 4–5. C.H. Robinson aided in securing CBP's permission to transport the goods and one of its employees testified at deposition that she submitted two Form 7512s to the CBP office at the Port of Chicago to authorize the transportation of the two shipments of tuna. Doc. No. 68-14 at 3; Doc. No. 86-2 at 8. However, CBP has no record of having received these forms. Doc. No. 68-14 at 3. Apparently, the industry practice is to submit Form 7512s electronically rather than manually, which would have automatically generated a record of receipt, but for various reasons C.H. Robinson's employee chose to submit the forms by mail. Doc. No. 87 at 42–43. According to this employee's testimony, she believes CBP signed the forms and sent them directly to the warehouse where the shipments were stored. Id. But no party has been able to produce documentation evidencing that the Form 7512s were signed by a CBP officer.

4

Sometime thereafter, Ryan Freight prepared a Notice of Intent to Export or Destroy Merchandise for Drawback Purposes (a "Form 7553") for each shipment, which he mailed to CBP alongside a copy of the Form 7512s which had previously been submitted by C.H. Robinson's employee. Id. at 33, 45. CBP signed the Form 7553s and returned these to Ryan Freight alongside the Form 7512s (which remained unsigned). Id. at 46. It is unclear from the record whether CBP returned these forms to Ryan Freight before or after the two shipments of tuna had left Chicago for Los Angeles.[2]

Ultimately, the two shipments arrived at the Port of Los Angeles where they were then reexported to Thailand. Several months later, CBP denied Jana Brands' drawback claims for these two shipments because Jana Brands could not demonstrate—without the signed Form 7512s—that the shipments were "in bond" when moving from the Port of Chicago to the Port of Los Angeles. Doc. No. 68-14.

      B.      Procedural Background

Jana Brands filed its Complaint on November 2, 2017 and its Amended Complaint on April 20, 2018. Doc. Nos. 1, 25. In a prior Order, the Court dismissed Count IV of Jana Brands' Amended Complaint, bought pursuant to Mass. Gen. Laws ch. 93A, and rejected C.H. Robinson's argument that Count III of the Amended Complaint was preempted by the

---

[2] The shipments appear to have left Chicago on or before September 22, 2015. Doc. Nos. 73-6, 73-7. In his affidavit, Jack Ryan, the owner of Ryan Freight, avers that he received the signed Form 7553s (and unsigned Form 7512s) back from CBP one day later, on September 23, 2015. Doc. No. 73 ¶ 40; see also Doc. No. 73-8 (FedEx receipt referencing the shipments at issue, indicating Ryan Freight received a delivery from CBP on September 23, 2015). But this averment is in seeming tension with Ryan's deposition testimony that the goods only left Chicago after he provided a "signed copy of the 7553 to both C.H. Robinson and the warehouse." Doc. No. 68-3 at 18; see also Doc. No. 73-3 at 2. In any event, the precise timing of when Ryan received the Form 7553s back from CBP sheds little light on whether C.H. Robinson owed a contractual duty to Jana Brands.

Commerce Commission Termination Act of 1995 ("ICCTA"), 49 U.S.C. § 14501(c)(1). Doc. No. 41.

C.H. Robinson moved for summary judgment on Count I and Count III of the Amended Complaint. Doc. No. 66. Jana Brands and Ryan Freight have each opposed. Doc. Nos. 72, 79. C.H. Robinson has replied. Doc. No. 85. The Court heard argument on April 2, 2021. Doc. No. 90.

II.     LEGAL STANDARD

Summary judgment is appropriate when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Once a party has properly supported its motion for summary judgment, the burden shifts to the nonmoving party, who "may not rest on mere allegations or denials of his pleading, but must set forth specific facts showing there is a genuine issue for trial." Barbour v. Dynamics Research Corp., 63 F.3d 32, 37 (1st Cir. 1995) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986)). Further, a court may enter summary judgment "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).

The Court is "obliged to view the record in the light most favorable to the nonmoving party, and to draw all reasonable inferences in the nonmoving party's favor." LeBlanc v. Great Am. Ins. Co., 6 F.3d 836, 841 (1st Cir. 1993). Even so, the Court is to ignore "conclusory allegations, improbable inferences, and unsupported speculation." Prescott v. Higgins, 538 F.3d 32, 39 (1st Cir. 2008) (quoting Medina–Munoz v. R.I. Reynolds Tobacco Co., 896 F.2d 5, 8 (1st Cir. 1990)).

### III.     DISCUSSION

C.H. Robinson argues it had no contractual obligation to provide Jana Brands with drawback services, meaning Jana Brands' claim for breach of contract (and thus also its claim for negligent performance of said contract) must necessarily fail. That is certainly a permissible view. Cast in one light, the record reveals that C.H. Robinson referred Jana Brands to a third-party expert, Ryan Freight, to manage the process of securing Jana Brands' drawback claims and that Ryan Freight was solely responsible for the success or failure of that project. But when cast in the light most favorable to the nonmovants, the record reveals that Ryan Freight acted subject to the control of C.H. Robinson, much as a subcontractor acts under the direction of a general contractor. Applying the familiar summary judgment standard, a reasonable finder of fact could conclude C.H. Robinson contracted to obtain duty drawbacks for the two shipments at issue. Summary judgment must therefore be denied.

The record reveals a genuine dispute as to the scope of C.H. Robinson's contractual obligations. After Jana Brands decided to reexport the shipments, C.H. Robinson advised it would "guide" Jana Brands through the drawback process and that it would "partner[]" with Ryan Freight for that purpose. Doc. No. 68-7 at 1, 4. The power of attorney signed at the outset of the relationship between Jana Brands and C.H. Robinson expressly authorized C.H. Robinson to perform drawback services, Doc. No. 81-1, and it was C.H. Robinson who executed a separate power of attorney delegating that authority to Ryan Freight, Doc. No. 73-1. C.H. Robinson then invoiced Jana Brands for Ryan Freight's work[3] and retained or otherwise received ten percent of Ryan Freight's commission. Doc. No. 87 at 3, 6.

---

[3] The Court recognizes Jana Brands requested that C.H. Robinson invoice it for Ryan Freight's work. Doc. No. 68-7 at 3. But that fact goes to the weight of this evidence rather than to its relevance.

C.H. Robinson's actions in facilitating the drawback claims at issue further support the conclusion it bore a contractual obligation. See Martino v. First Nat. Bank of Bos., 280 N.E.2d 174, 179 (Mass. 1972) ("There is no surer way to find out what parties [to a contract] meant than to see what they have done." (quoting Pittsfield & N.A.R. Corp. v. Bos. & A.R. Co., 157 N.E. 611, 614 (Mass. 1927) (alteration in original))). C.H. Robinson (1) sent Jana Brands a questionnaire to gather the preliminary information necessary to begin the drawback process, Doc. No 68-7 at 2; (2) located a drawback specialist to manage the claim, Doc. No. 87 at 26; (3) worked with that specialist and others to coordinate the reexportation of the shipments, Doc. No. 81-3 (documenting C.H. Robinson's involvement in the reexportation process); and (4) submitted the Form 7512s seeking to authorize in bond transportation, a necessary prerequisite to a successful drawback claim, Doc. No. 86-2 at 8. It also further appears from the record that C.H. Robinson charged a fee for these coordination activities, separate from the bill it submitted on Ryan Freight's behalf. Doc. No. 81-4 at 12.[4]

Faced with these facts, a reasonable jury could conclude C.H. Robinson agreed to perform drawback services, either as part of its original customs brokerage agreement with Jana

---

[4] C.H. Robinson takes issue with several of these facts. First, C.H. Robinson claims Jana Brands is foreclosed by its pleadings from pointing to C.H. Robinson's involvement in the shipment of goods. See Doc. No. 85 at 6. But Jana Brands' Opposition points to C.H. Robinson's coordination and customs brokerage activities, not to any shipment activities. See Doc. No. 79 at 4–5. Second, C.H. Robinson argues the testimony of the employee who submitted the Form 7512s is not probative because she was not a Rule 30(b)(6) designee and has no direct knowledge of C.H. Robinson's contractual obligations. Doc. No. 85 at 9; Doc. No. 87 at 28. But this is mistaken: while the employee's testimony cannot bind C.H. Robinson as a designated deponent's might, it is nonetheless competent evidence of the corporation's conduct and thus, circumstantially, the corporation's understanding of its contractual obligations. Finally, C.H. Robinson argues this entire exercise is academic as Ryan Freight has already admitted liability. Doc. No. 67 at 16. But Ryan Freight's liability vel non for any breach is immaterial as to whether C.H. Robinson had a duty to Jana Brands, which is the only issue raised by C.H. Robinson's Motion for Summary Judgment.

Brands or subsequently in exchange for compensation in the form of its coordination fees and the percentage it took from Ryan Freight's drawback commission.[5] Thus, the Court rejects C.H. Robinson's arguments that it lacked a contractual obligation to perform drawback services. C.H. Robinson's Motion for Summary Judgment did not challenge any further elements of the breach of contract claim expressed in Count I of Jana Brands' Amended Complaint.[6] The Motion for Summary Judgment is therefore DENIED as to Count I. Because C.H. Robinson's argument for summary judgment on Count III depends entirely on defeating Count I, see Doc. No. 67 at 14, the Court denies the Motion for Summary Judgment as to Count III as well.

IV.    CONCLUSION

For the foregoing reasons, the Motion for Summary Judgment (Doc. No. 66) is DENIED. The parties are instructed to file a joint status report addressing any scheduling concerns the Court should consider in establishing a trial date, the anticipated length of trial, and whether they are interested in pursuing mediation.

SO ORDERED.

/s/ Leo T. Sorokin
Leo T. Sorokin
United States District Judge

---

[5] C.H. Robinson argues in the alternative that even if an agreement to provide drawback services could be found, it would fail for lack of consideration. Doc. No. 67 at 13–14. The Court's conclusion a reasonable fact finder could find the provision of drawback services was part of Jana Brands' original oral agreement with C.H. Robinson is dispositive of this argument. But even assuming the drawback claims were the subject of a fresh agreement, there remains a genuine dispute of fact as to whether C.H. Robinson received consideration in the form of its coordination fees and its percentage of Ryan Freight's commission.

[6] In any event, on this record, C.H. Robinson has not established an entitlement to judgment on any of the remaining elements of Jana Brands' claim; a reasonable fact finder could conclude it breached its contractual duties and that this breach damaged Jana Brands. Of course, a fact finder could also take a different view.